RESOLUTION TRUST CORPORATION, as receiver of Midwest Savings Association, F.A., Plaintiff,

v.

Harold GREENWOOD, Jr., John Barry, Lawrence M. Coss, Thomas P. Fitzgibbon, Sr., Susan Greenwood–Olson, F. William Johnson, John J. Kenna, Robert Mampel, J.E. Marlin, Charlotte E. Masica, Richard K. Nelson, Lloyd K. Peterson, Thomas Resch, William Sipple, Donald Snede, and Shenehon & Associates, Defendants.

No. Civ. 4–92–2.

United States District Court, D. Minnesota, Fourth Division.

July 20, 1992.

John Eugene Yanish, John Paul Martin, Petersen, Tews & Squires, Minneapolis, Minn., Mark S. Bernstein, Ray G. Rezner, Wendi Sloane Weitman, Elyse M. Tish, Meribeth Mermall, Barack, Ferrazzano, Kirschbaum & Perlman, Chicago, Ill., April A. Breslaw, Washington, D.C., for plaintiff.

Bruce A. Rasmussen, Scott R. Carlson, Bruce A. Rasmussen & Associates, Minneapolis, Minn., for defendant John Barry.

William Richard Busch, St. Paul, Minn., for Thomas P. Fitzgibbon, Sr. and John J. Kenna.

Susan Greenwood–Olson, St. Paul, Minn., pro se.

Dylan J. McFarland, Fred Burstein, Fred Burstein & Associates, Minneapolis, Minn., for F. William Johnson.

Robert Mampel, pro se.

Steven Z. Kaplan, Wayne A. Hergott, Moss & Barnett, Minneapolis, Minn., for J.E. Marlin and Lloyd K. Peterson.

Richard K. Nelson, pro se.

E. Martin Stapleton, Mark Murray Nolan, Stapleton, Nolan & McCall, St. Paul, Minn., for defendant Thomas Resch.

William Sipple, pro se.

Donald Snede, pro se.

Lindsay G. Arthur, Jr., Katherine L. MacKinnon, Paula Duggan Vraa, Arthur Chapman McDonough, Kettering & Smetak, Minneapolis, Minn., for Shenehon & Associates.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff Resolution Trust Corporation (RTC) brought this action against sixteen

defendants associated with Midwest Federal Savings and Loan Association (Midwest). The RTC asserts claims of breach of fiduciary duty, negligence, gross negligence and unjust enrichment against the defendant directors and officers. Various defendants have raised affirmative defenses. Now before the court are motions by the RTC to strike affirmative defenses of defendants John J. Kenna, Thomas P. Fitzgibbon, Sr., John Barry, F.W. Johnson, J.E. Marlin, Richard K. Nelson, Lloyd Peterson, Thomas Resch, William Sipple, and Donald Snede. The challenged affirmative defenses are summarized in a chart submitted by the RTC which accompanies this memorandum.

## I.

Midwest was a federally chartered mutual membership association headquartered in Minneapolis, Minnesota. It was placed in conservatorship on February 13, 1989. Subsequently, in May 1989, Midwest was placed into receivership and Midwest Savings Association (Midwest Savings) was created to facilitate the liquidation of Midwest and the reorganization of Midwest's assets. A majority of Midwest's assets and liabilities were transferred to Midwest Savings at that time. In October 1990, the RTC was appointed to serve as receiver of Midwest Savings and in this capacity instituted this action on January 2, 1992.

The RTC challenges the following affirmative defenses:

* that the RTC's action is barred by the applicable statute of limitations (all but Snede);

* that as a result of the conduct of the Federal Home Loan Bank Board (FHLBB), the RTC, and other federal banking agencies, the RTC's claims are barred by the doctrines of estoppel, waiver, and culpable conduct on the part of one or more federal regulatory agencies (all);

* that the RTC's damages were caused by persons or entities other than these defendants (all);

* that the RTC failed to mitigate its damages (all);

* that the RTC is obligated to indemnify defendants for their attorneys fees and any judgment obtained by the RTC against defendants (all but Snede);

* that the RTC's damages are precluded because it assumed the risk of the injury claimed here (all but Kenna and Fitzgibbon);

* that the RTC's claims are barred by Midwest's contributory negligence and failure to mitigate its damages (all but Kenna and Fitzgibbon);

* that the RTC's claims are barred by the doctrine of comparative fault (all but Kenna, Fitzgibbon, and Snede);

* that the RTC lacks standing to assert its claims (all but Kenna and Fitzgibbon); and

* that defendant is not responsible for the failure of Board of Directors and its Audit and Executive Committee, and the Federal Home Loan Bank and its Principal Supervisory Agent, to enforce any and all alleged breaches of compliance with any and all Federal Home Loan Bank regulatory requirements (Snede only).

## II.

No defendant responded to the RTC's motion to strike the affirmative defenses of contributory negligence, assumption of risk, and waiver. At oral argument, counsel for defendants conceded that these defenses should be stricken. Three defendants have not submitted any materials in response to the RTC's motion: Nelson, Sipple, and Snede.

### (1) *Statute of Limitations.*

The RTC argues that its complaint is timely under the Financial Institutions Reform, Recovery & Enforcement Act of 1989 (FIRREA). FIRREA provides a three year period for tort-based claims and a six year period for contract claims. The periods do not begin to run until the date the institution went into conservatorship or the date the cause of action accrued, whichever is later. Here, where Midwest was placed into conservatorship on February 13, 1989,

and the complaint was filed on January 2, 1992, there can be no factual issue that the claims are untimely. In the alternative, the RTC argues that its claims are timely because the limitations periods should be tolled during the time Midwest was adversely dominated by the defendants.

Kenna and Fitzgibbon argue that the limitations provisions of FIRREA do not apply because the RTC is not suing as conservator or receiver of Midwest, the failed institution, but of Midwest Savings to which Midwest's assets were transferred. Thus the standard statute of limitations for the tort claims applies and should begin to run when each challenged loan was made. They also argue that factual questions concerning actual adverse domination precludes striking the defense.

Marlin and Peterson argue that FIRREA's limitations provisions do not apply because FIRREA had not been enacted at the time Midwest was declared insolvent and placed in conservatorship, and it did not become effective until August 9, 1989, several months after the takeover by federal regulators. There is no indication that Congress intended FIRREA to be retroactive under these circumstances. Thus the standard three-year tort period should apply.[1]

The RTC replies that all but one court which has considered the retroactivity of FIRREA's limitations provisions have concluded that FIRREA is retroactive; and the decision of the one court which did not was flatly rejected by this court. Furthermore, the clear language of FIRREA authorizes the RTC to bring this action as receiver of Midwest Savings and applies its own limitations period. The RTC also replies that there are no true issues of fact concerning adverse domination.

### (2) *Conduct of the RTC and Other Federal Agencies.*

The RTC argues that several affirmative defenses should be considered together and stricken. These are defenses based on the premise that the RTC and the other federal agencies breached a duty owed to these defendants in dealing with Midwest's assets. The defenses are estoppel, waiver, failure to mitigate, assumption of risk, contributory negligence, comparative fault, and, as asserted, "culpable conduct on the part of one or more of said agencies." Answer of Kenna and Fitzgibbon.

According to the RTC, public policy dictates that these defenses be stricken. Supervisory agencies should not be held responsible for the failings of financial institutions, lest every agency action be open to second guessing. The RTC owes no duty of care to the officers and directors of failed institutions; its duty runs to the insurance fund it is charged to protect and the general public. With no duty to them, defendants cannot assert defenses based on the RTC's or other agencies' conduct.

Furthermore, the RTC contends that defenses based on the conduct of others besides the RTC or federal agencies should be stricken because these issues should be raised as cross-claims among the defendants or as third-party claims. The defense that Midwest is culpable also fails. Former officers and directors cannot assert their institution's own negligence or failure to mitigate damages as defenses against the RTC. Midwest's liability for negligence, if any, was not transferred to the RTC via Midwest Savings; the defendants' recourse is directly against Midwest under the claims procedure established by FIRREA.

Kenna and Fitzgibbon respond that the indictment and conviction of Greenwood and others establish that they, and not Kenna and Fitzgibbon, were liable for making the loans involved, thus collaterally estopping the RTC's claims here. They argue that equitable estoppel bars the RTC from claiming that they were not entitled to rely on FHLBB reports as being true

---

1. Marlin and Peterson also argue that fact issues preclude striking this defense under the adverse domination doctrine. Where different defendants repeat arguments made by others, they need not be restated in this opinion. It appears that all the defendants who submitted materials have reviewed the materials of the others; they each state that they join in all the arguments of the others.

and comprehensive. They contend that their defense that the claimed damages were caused by others is a valid affirmative defense because it challenges the element of proximate cause which the RTC must show. They argue that their defense that the RTC failed to mitigate damages is valid because the requirement to mitigate damages is not a legal duty but a limitation on the amount of damages recoverable.

Marlin and Peterson respond that the "no duty" rule does not apply to Minnesota comparative fault, which does not compare relative duties among the parties but the relative contribution of each party's negligence to the damage as a matter of causation. They also argue that they have a particular estoppel defense based on the fact that at their depositions in prior litigation, *Midwest v. Green Tree Acceptance Corp.*, they were represented by the same counsel who also represented Midwest Savings. This took them into the confidence of Midwest Savings. They were not advised that there were any actual or potential conflicts of interest between themselves as directors and the institution. It would be inequitable for Midwest Savings, and the federal regulators then in charge of it, to represent them in connection with matters relating to their knowledge and conduct as directors, and then to turn around and subsequently sue them here for breaches of duty as directors.

Johnson responds that the "no duty" rule does not apply to actions taken by Midwest prior to its placement in conservatorship. This makes Midwest's conduct relevant to the defenses. In addition, the RTC's claims, acquired from Midwest, are only as strong as those possessed by Midwest; thus misconduct by Midwest should reduce or preclude recovery here. Johnson contends he is entitled to assert the liability of others as a defense, without bringing cross claims or third party claims, because he does not seek to shift his own liability to others but to show that he is not liable at all. He also contends that he is entitled to the defense of Midwest's failure to mitigate damages based on its conduct following his resignation in August 1986.

The RTC replies that the no duty rule does bar the defenses of failure to mitigate, comparative fault, proximate causation, estoppel, and waiver. The requirement to mitigate damages imposes a duty on the plaintiff, as does the doctrine of comparative fault; but public policy precludes former officers and directors from citing conduct by or a duty of the RTC as a bar to recovery. A defense designed to reduce the RTC's recovery because of regulatory action or inaction should be stricken.

The RTC also replies that the causation defense should be stricken. Officers and directors cannot shift the blame onto federal regulators for failing to alert them to the very problems they were either directly responsible for or responsible to detect. Nor can blame be shifted onto the institution itself for its conduct prior to conservatorship; Midwest could act only through the defendants. Similarly, the estoppel defense should be stricken under the no duty rule because the RTC and its sister agencies cannot be held accountable for failing to discover misfeasance. In addition, the estoppel defense fails because defendants have not alleged the essential element of affirmative misconduct by the government in order for it to apply.

The RTC replies to Marlin and Peterson that their representation by counsel for the RTC as non-party witnesses in *Green Tree* does not give rise to equitable estoppel here. Marlin and Peterson do not assert that the RTC counsel told them the RTC had no claim against them, nor that they shared confidences with counsel relevant to this action. Their explanation as to how the RTC is estopped from bringing the present claims is inadequate.

Finally, the RTC replies to Kenna and Fitzgibbon that the criminal convictions do not provide a basis for collateral estoppel. Since their respective roles in making the disputed loans were not at issue in the criminal cases, the issue sought to be precluded is not identical to the issue previously decided. The indictment left open the issue of who specifically was involved in the conspiracy, stating that the criminal

defendants unlawfully conspired "with each other and other persons both known and unknown to the Grand Jury." In addition, even a finding that these defendants were free of criminal conduct would not bar civil liability since the standards of proof are different in the two forums.

### (3) *Right to Indemnification.*

According to the RTC, defendants have no right of indemnification because they have failed to plead that they have exhausted their administrative remedies related to indemnification under FIRREA or that they satisfy all the requirements of the indemnification regulation. The court lacks subject matter jurisdiction over the indemnification claim because defendants did not first adjudicate the claim with the receiver under FIRREA. Even with jurisdiction, the claim fails because there has not been a final judgment or settlement entitling defendants to indemnification under the regulations. Defendants also have not given the Office of Thrift Supervision the requisite notice under the regulations. The regulations also require consideration of an indemnification claim by the thrift institution's disinterested directors, a situation which cannot be fulfilled here because there is no such active board of directors to receive the claim. In light of these failures to follow the regulations, the indemnification claim is premature and not ripe for adjudication, and is thus precluded by Article III of the Constitution. It is also barred by the doctrine of prudential mootness since a commitment to indemnify by Midwest would be worthless; Midwest has no assets to provide for indemnification. Finally, the RTC contends that the obligation to indemnify remained with Midwest's receiver when certain Midwest assets were transferred to Midwest Savings, so the defense is asserted against the wrong party.

Fitzgibbon and Kenna respond that they did exhaust their administrative remedies in a companion case brought by the RTC, Civ. 3–91–10, and in a related state court case brought by Northwest Racquet. The RTC denied their indemnification request, stating that the asset transfer to Midwest Savings excluded this obligation and that the receiver of Midwest has no assets for payment. That decision should be applied here. They also argue that the impossibility of presenting their claim to the board of directors should be excused under the prevention doctrine of contract law, which eliminates the need for meeting a condition which cannot be fulfilled because of an action of the other party prevents it (i.e., the seizure of Midwest). As to the 60 days notice requirement, it is the board which is required to give such notice, a requirement also excusable under the prevention doctrine. Finally, FIRREA's claim filing provisions should not apply because they are intended only to cover claims in existence at the time of closure, not claims arising after closure.

Marlin and Peterson respond that the asset transfer agreement does not exclude indemnification for all of the claims asserted here. They argue that the RTC is estopped from denying indemnification based on its prior representation of Marlin and Peterson, thereby acknowledging its responsibility to provide counsel for directors at its own expense. They also contend that even if they are barred from indemnification for failure to meet regulatory or FIRREA requirements, the impossibility of meeting these now should not preclude them from seeking indemnification under the common law or by estoppel.

The RTC replies by noting that no defendant has responded to its arguments that Midwest has no assets to provide indemnification, and that the doctrine of prudential mootness makes their claim not ripe for adjudication. It argues that the prevention doctrine, borrowed from contract law, does not apply here. There is no contract involved in this matter. The doctrine requires that the prevention not be otherwise unjust in order to apply; since the agencies did not act unjustly in placing Midwest in conservatorship, indeed they were authorized to do so by statute, defendants are not excused from the regulatory requirements by this action.

According to the RTC, FIRREA's claim filing provisions are intended to cover all

claims, not just claims in existence at the time of closure. The defendants' requests in other litigation were untimely and did not meet the FIRREA requirements, thus they have not exhausted their administrative remedies.

*(4) RTC's Standing to Sue.*

The RTC argues that Nelson's affirmative defense that it lacks standing to bring these claims should be stricken. FIRREA expressly authorizes an action by the RTC against the officers and directors of the financial institution which has been seized.

Defendants Kenna and Fitzgibbon specifically concede this. Nelson has not responded to the RTC's motion to strike this affirmative defense.

## III.

The RTC's motion is brought pursuant to Fed.R.Civ.P. 12(f) which provides:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

While a Rule 12(f) motion to strike is not generally favored, it is properly granted when there are no questions of fact and a defense is insufficient as a matter of law. *Federal Deposit Ins. Corp. v. Carlson,* 698 F.Supp. 178, 178–79 (D.Minn.1988).

*(1) Statute of Limitations.*

■ The affirmative defense that the RTC's claims are barred by the statute of limitations should be stricken because the claims are timely under FIRREA. The statute of limitations provisions of FIRREA are applied retroactively. "FIRREA's limitations period applies retroactively so long as retroactive application does not revive a 'stale' claim." *Federal Deposit Ins. Corp. v. Bancinsure, Inc.,* 770 F.Supp. 496, 499 (D.Minn.1991). A stale claim would be one which was already

barred as untimely at the time the institution went into conservatorship. Here the claims were still viable at the time Midwest was placed in conservatorship. Hence the retroactive application of FIRREA is proper. There are no conceivable facts under which this affirmative defense could be sustained and it should be stricken. The court need not reach the issue of the tolling of the statute under the doctrine of adverse domination.

*(2) Conduct of the RTC and Other Federal Agencies.*

■ The no duty rule applies under the circumstances here. The federal regulatory agencies have no duty to warn financial institutions of improprieties its examinations reveal in order to protect the institutions from losses. *Federal Deposit Ins. Corp. v. Carlson, supra,* 698 F.Supp. at 179. The reasoning behind this is that the agencies' purpose "is to stabilize the banking industry and promote public confidence in banks and that, therefore, [their] duty is to the general public not individual banks, directors or officers." *Id.* The agencies' duty "is owed, not to bank directors, officers or even shareholders, but to the insurance fund it is charged with protecting and to the banking public." *Federal Deposit Ins. Corp. v. Stanley,* 770 F.Supp. 1281, 1307 (N.D.Ind.1991).

Because of the no duty rule, each of the affirmative defenses which rely upon conduct by or seek to impose a duty on the federal regulatory agencies as a bar to the RTC's recovery is insufficient as a matter of law. These are the defenses of waiver, estoppel (except as discussed below), culpable conduct of the RTC, FDIC, FSLIC, and FHLBB, contributory negligence of these agencies, comparative fault of these agencies, failure to mitigate damages, assumption of risk, and the assertion that the RTC's damages were caused by acts and omissions of others.

■ Defendants' reliance on *Federal Deposit Ins. Corp. v. Ashley,* 749 F.Supp. 1065 (D.Kan.1990) to support their defense of failure to mitigate damages is misplaced. *Ashley* is based on Kansas law, which does

not include duty as an element of failure to mitigate. Minnesota law, on the contrary, does include the element of duty. "[A] party has a duty to act reasonably in avoiding the consequences of the tortfeasor's act." *Graffunder v. Mahtomedi*, 376 N.W.2d 282 (Minn.Ct.App.1985). The similar defense of comparative fault also imposes a duty on the plaintiff. Minn.Stat. § 604.01 ("Fault" includes "unreasonable failure to avoid an injury or to mitigate damages"). *See Federal Deposit Ins. Corp. v. Carlson, supra,* 698 F.Supp. at 179 (striking defense of comparative fault). Since the RTC did not owe a duty to defendants, each of these defenses should be stricken.

■ The lack of causation defense, to the extent it seeks to put the conduct of the federal regulatory agencies at issue, also fails as a matter of law. Under the no duty rule, agency conduct is not on trial. Of course the RTC must still establish that defendants' conduct caused the injuries for which it seeks relief, since this is an element of its claims. And the defendants remain free to assert crossclaims and third party claims against each other and those whom they believe should bear their own responsibility. Similarly, defendants' argument that the RTC stands in the place of Midwest and is subject to the defense that the conduct of Midwest itself or its officers and directors was culpable is without merit. As stated in *Federal Deposit Ins. Corp. v. Crosby,* 774 F.Supp. 584, 587 (W.D.Wash. 1991), concerning a financial institution called Lynnwood,

> Defendants cannot claim Lynnwood's comparative negligence or failure to mitigate damages as defenses to their own misconduct. Any breach of duty by a Lynnwood agent or employee other than defendants possibly can support a claim by defendants against that person. However, this court holds as a matter of law that such allegations do not constitute valid affirmative defenses against FDIC.

Midwest could act only through defendants; to the extent it acted through others, defendants may implead them. The

defense which is based on Midwest's own culpable conduct should be stricken, however.

■ The defense of equitable estoppel should be stricken for all defendants except Marlin and Peterson. Equitable estoppel is applicable against the government only if the party asserting it shows that the government agency engaged in "affirmative misconduct" in addition to the traditional elements of estoppel. *Immigration & Naturalization Service v. Miranda,* 459 U.S. 14, 17, 103 S.Ct. 281, 282, 74 L.Ed.2d 12 (1982); *McDermott v. United States,* 760 F.2d 879, 882 (8th Cir.1985). Only Marlin and Peterson have presented facts which might indicate affirmative misconduct by the government. They maintain that their representation in prior litigation by the same counsel who represented Midwest Savings makes it inequitable for the RTC to bring claims against them now in its capacity as receiver for Midwest Savings. The facts to support this allegation are not clear on the present record; it appears that the claim is based on inferences from the prior representation and not from actual assertions by RTC counsel. It is significant, however, that the RTC believed it necessary to submit the affidavit of its outside counsel that represented Marlin and Peterson to show that there was no misconduct, i.e., that there is in fact no reason for Marlin and Peterson to believe that their representation insulated them from subsequent claims by the RTC. In this light, it seems premature at this stage of the proceedings to determine it to be impossible to present facts in support of this defense. It should not be stricken under Fed.R.Civ.P. 12 and should be subject to discovery.

■ Collateral estoppel should not be applied based on the criminal convictions. Collateral estoppel would only be appropriate when the issue sought to be precluded is identical to the issue previously decided. *Wellons, Inc. v. T.E. Ibberson Co.,* 869 F.2d 1166, 1168, 1170 (8th Cir.1989). The roles of Kenna and Fitzgibbon, who raise this defense, were not at issue in the criminal cases. There was no finding that they

were free from criminal conduct. Others were convicted, but this does not of itself preclude liability for Kenna and Fitzgibbon. The indictment expressly left open the issue of who was involved in the acts constituting the conspiracy. Furthermore, even if Kenna and Fitzgibbon had been found not criminally liable, the standard for civil liability is different and it could still be imposed. The affirmative defense of collateral estoppel based on the criminal convictions should be stricken.

### (3) *Indemnification.*

■ The indemnification affirmative defense should be stricken on the basis of the doctrine of prudential mootness. Midwest has no assets to provide for such indemnification, making the defense moot. In *Adams v. Resolution Trust Corp.,* 927 F.2d 348 (8th Cir.1991), the Eighth Circuit affirmed the district court's decision to dismiss as moot a plaintiff's common law fraud claim because Midwest had no assets to grant relief on it. This finding and conclusion applies here.[2]

### ORDER

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. the motion by the RTC to strike affirmative defenses pursuant to Fed. R.Civ.P. 12(f) is granted as to the following affirmative defenses:

   (a) John Barry's affirmative defenses 2, 3 and 5;

   (b) F. William Johnson's affirmative defenses 3, 4 and 5;

   (c) J.E. Marlin's and Lloyd Peterson's affirmative defenses 3, 4 (except as noted below), 6, 7, 9 and 10;

   (d) Richard K. Nelson's affirmative defenses 3, 4, 5, 6 and 7;

   (e) Thomas Resch's affirmative defenses (b), (c), (d), (e), (f) and (h);

   (f) William Sipple's affirmative defenses 3, 4, 6, 7, 9 and 10;

   (g) John Kenna's and Thomas Fitzgibbon's affirmative defenses (b), (c), (e), (f) and (h);

   (h) Donald Snede's affirmative defenses 3, 4, 6, 7 and 9.

2. the motion by the RTC to strike affirmative defense 4 of J.E. Marlin and Lloyd Peterson pursuant to Fed. R.Civ.P. 12(f) is denied with respect to the allegation of collateral estoppel due to the RTC's prior legal representation.

---

2. Since neither Nelson nor Snede responded to the RTC's motions to strike the affirmative defenses particular to them, the motions may be granted. The court has reviewed the defenses and concludes that it would be appropriate that they be stricken.