**RESOLUTION TRUST CORPORATION**

v.

**Homer C. YOUNGBLOOD, et al.**

**Civ. No. 1:92–cv–560–WCO.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 25, 1992.

Karen Dale Wildau, Powell Goldstein Frazer & Murphy, Atlanta, GA, for Resolution Trust.

Peter Quirk Bassett, Alston & Bird, Atlanta, GA, for Homer G. Youngblood.

Carl Adcock, Morrow, GA, for Carl Adcock.

Peter Quirk Bassett, Alston & Bird, Atlanta, GA, for Alvin Barge, George H. Brodnax, Silas K. Cannon and Thorwald Eros.

Robert Edward Hicks, Hicks Maloof & Campbell, Atlanta, GA, for John Tansley.

### ORDER

O'KELLEY, Chief Judge.

The captioned case is before the court on the following motions: plaintiff's motion to dismiss the defendants' counterclaims for lack of subject matter jurisdiction; plaintiff's motion to strike certain affirmative defenses; defendants' motion for oral argument regarding the motion to strike; defendants' motion for leave to file a surreply regarding the motion to dismiss; plaintiff's motion for leave to file a reply to the surreply regarding the motion to dismiss; and the plaintiff's motion to supplement its motion to strike.

### GENERAL BACKGROUND

The plaintiff Resolution Trust Corporation ("RTC"), as receiver for First Federal Savings & Loan Association ("First Federal"), filed this lawsuit seeking to recover damages against seven former officers and directors of First Federal. In general, the complaint asserts claims of gross negligence, negligence, breach of fiduciary duty, and breach of contract against defendants Homer C. Youngblood Jr., Alvin Barge, George Brodnax III, Silas K. Cannon, and Thorwald Eros (hereinafter collectively referred to as the "director defendants"), and defendants John Tansey [1] and Carl Adcock, former officers of First Federal.

The background facts as related herein are derived from the pleadings of the parties. Prior to March 9, 1989, First Federal was a mutual savings and loan association headquartered in Atlanta, Georgia, operating under federal charter. First Federal's deposits were insured by the Federal Savings and Loan Insurance Corporation ("FSLIC"). On March 9, 1989, the Federal Home Loan Bank Board ("FHLBB") determined that First Federal was insolvent and placed First Federal in conservatorship under the FSLIC. Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), enacted on August 9, 1989, the Resolution Trust Corporation succeeded the FSLIC as conservator of First Federal. 12 U.S.C. § 1441a(b). On May 25, 1990, First Federal was placed in receivership under the RTC.

On March 6, 1992, the RTC as receiver for First Federal, filed suit against the above-named defendants, alleging that the defendants, former directors and officers of First Federal, caused or permitted losses to occur to First Federal by, among other things, their failure to exercise the required level of care and diligence in the performance of their duties. More specifically, the RTC alleges that the defendants breached their duties to First Federal in connection with mobile home loans made by First Federal and activities relating to the mobile home portfolio of First Federal, with damages alleged to exceed $26.5 million.

---

1. The plaintiff also asserts a claim of breach of duty of loyalty against defendant Tansey.

The defendants answered the complaint, asserting various affirmative defenses and also filing counterclaims against the RTC seeking indemnification pursuant to federal regulations and First Federal resolutions.[2] The RTC has moved to dismiss the counterclaims, contending that the court lacks subject matter jurisdiction over these counterclaims under FIRREA.

## MOTION TO DISMISS COUNTERCLAIMS

Under FIRREA, the RTC has the same powers and rights as the Federal Deposit Insurance Corporation ("FDIC") under 12 U.S.C. §§ 1821–23. 12 U.S.C. § 1441a(b)(5)(A). Accordingly, in winding up the affairs of a failed institution, the RTC must publish a notice to the institution's creditors to present their claims against the institution to the receiver by a specified date. 12 U.S.C. § 1821(d)(3)(B)(i). Once a claim is filed with the receiver, the RTC has 180 days in which to determine whether to allow or disallow the claim. *Id.* § 1821(d)(5)(A)(i). Within 60 days of the disallowance of the claim or the expiration of the 180–day period, the claimant has the option of either requesting administrative review of his claim, or filing suit in federal district court, which shall have jurisdiction to hear his claim. *Id.* § 1821(d)(6)(A). FIRREA expressly limits the court's jurisdiction to review claims against failed institutions:

Except as otherwise noted in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [RTC] has been appointed receiver ... or

(ii) any claim relating to any act or omission of such institution or the [RTC] as receiver.

*Id.* § 1821(d)(13)(D). Accordingly, this court does not have jurisdiction to hear claims for payment from an institution under RTC receivership or claims relating to acts or omissions of the RTC as receiver, unless the claimant has first completed the administrative process. After that administrative process is completed, the statute expressly grants the court jurisdiction to hear the claim. *Id.* § 1821(d)(6)(A).

The RTC contends, and the court agrees, that the defendants' counterclaims seeking indemnification for any liability or expenses they may incur as a result of this litigation fall within the category of "any claim or action for payment from ... the assets of any depository institution for which the [RTC] has been appointed receiver" under 12 U.S.C. § 1821(d)(13)(D), and therefore are expressly exempted from the court's subject matter jurisdiction until such time as the administrative process described in section 1821(d) is completed.[3]

The defendants contend that their claims for indemnification are essentially claims for recoupment[4] arising from the RTC's lawsuit against them and that therefore these are compulsory counterclaims under Federal Rule of Civil Procedure 13(a). They argue that the RTC, by filing suit against them, has waived the argument of sovereign immunity as to compulsory counterclaims and that therefore their counterclaims should be allowed to stand. However, the court notes that Federal Rule 13 "shall not be construed to enlarge beyond the limits now fixed by law the right to assert counterclaims or to claim credits

---

2. Defendant Adcock's counterclaim contains three counts: one seeks indemnification for liability and litigation expenses; one seeks affirmative relief for intentional infliction of emotional distress; and one claim for set-off and recoupment for RTC's alleged failure to follow standard practice in liquidating First Federal's assets.

3. The court notes that defendant Adcock apparently has not availed himself of the RTC administrative process for his indemnification claim.

4. "Recoupment" has been defined as a "keeping back something which is due, because there is an equitable reason to withhold it." It is available to reduce or satisfy the plaintiff's claim and does not include any affirmative relief. *Black's Law Dictionary* 1146 (5th ed. 1979). While the defendants' counterclaims seek indemnification from any liability that may be imposed upon them in this lawsuit, they also seek payment of their litigation expenses.

against the United States or an officer or an agency thereof." Fed.R.Civ.P. 13(d). Whether a particular counterclaim meets the requirements of Federal Rule 13(a), or whether a counter-defendant may properly assert the defense of sovereign immunity to a particular counterclaim, is irrelevant if Congress has expressly divested the court of jurisdiction to hear that counterclaim.

Alternatively, the defendants contend that if the court currently lacks jurisdiction over the counterclaims, those counterclaims should be stayed or dismissed without prejudice pending resolution of the administrative process. However, "[w]henever it appears ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3) (emphasis added). Accordingly, the court grants the plaintiff's motion to dismiss the defendants' counterclaims for lack of subject matter jurisdiction.[5]

## MOTION TO STRIKE

### A. Motions to Strike—The Standard

"Upon motion made by a party ... the court may order stricken from any pleading any insufficient defense...." Fed. R.Civ.P. 12(f). The court has broad discretion in disposing of a motion to strike. *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349 (5th Cir.1983); *Von Bulow v. Von Bulow*, 657 F.Supp. 1134 (S.D.N.Y.1987); *Brown v. Joiner Intern., Inc.*, 523 F.Supp. 333, 336 (S.D.Ga.1981). However, motions to strike are not favored in the federal rules. *Daugherty v. Firestone Tire & Rubber Co.*, 85 F.R.D. 693, 694 (N.D.Ga. 1980) (Hall, J.); *OKC Corp. v. Williams*, 461 F.Supp. 540 (N.D.Tex.1978) (motion to strike should not be granted unless clearly warranted).

A motion to strike "will not be granted 'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.'" *William Z. Sal-*

cer v. Envicon Indus., 744 F.2d 935, 939 (2d Cir.1984), *vacated on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986) (quoting *Lehmann Trading Corp. v. J & H Stolow, Inc.*, 184 F.Supp. 21, 22–23 (S.D.N.Y.1960)). Where a defense is insufficient as a matter of law, it should be stricken to eliminate the unnecessary delay and expense of litigating it. *FDIC v. Berry*, 659 F.Supp. 1475, 1478–79 (E.D.Tenn.1987). However, "motions to strike cannot be used to determine disputed fact questions, nor can they be used to decide disputed and substantial questions of law, particularly where there is no showing of prejudice to the movant." *Brown*, 523 F.Supp. at 336 (citing *Augustus v. Board of Public Instruction*, 306 F.2d 862, 868 (5th Cir.1962)).

> '[E]ven when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial questions of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits.' To do otherwise would be to run the risk of offering an advisory opinion on an abstract and hypothetical set of facts.

*William Z. Salcer*, 744 F.2d at 939 (quoting 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1381, at 800–01).

### B. Contentions of the Parties

The RTC has brought this action in its capacity as receiver for First Federal Savings & Loan Association ("First Federal"), alleging that the defendants, while acting as officers and directors of First Federal, caused or permitted losses to occur to First Federal as a result of their alleged breach of their fiduciary duty of care, breach of implied contract, and/or negligence,[6] in the context of their decisions regarding First Federal's mobile home loan portfolio.

The defendants have asserted various affirmative defenses, which the RTC chal-

---

5. "A claim which either matured or was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading." Fed.R.Civ.P. 13(e).

6. The RTC also alleged that defendant Tansey breached his fiduciary duty of loyalty.

lenges in its motion to strike. Those defenses are: laches,[7] waiver,[8] estoppel,[9] negligence,[10] contributory negligence,[11] comparative negligence,[12] assumption of risk,[13] acts or omissions by RTC or its predecessors,[14] commercially unreasonable actions by RTC or its predecessors,[15] failure to mitigate damages,[16] indemnification,[17] and set-off.[18]

The RTC's general rationale for its motion is that the RTC owes no duty to the officers or directors of a failed financial institution, but owes a duty only to the general public, and that insofar as the claimed affirmative defenses have duty as one of their elements, they should be stricken. The RTC also contends that indemnification and set-off are not affirmative defenses but are more properly asserted as counterclaims, which should be dismissed for lack of subject matter jurisdiction.

 The defendants respond generally that (1) the court should not consider striking any of their affirmative defenses until discovery has been conducted and the legal issues can be presented in some factual context;[19] (2) that the conduct of the RTC and its predecessors is relevant to the issue of causation, in that the defendants should only face liability for those damages for which they are responsible; and (3) whether a duty is owed to the officers and directors is irrelevant in light of the RTC's general obligation to itself and the insurance fund to limit the amount of damages recoverable.

## C. Analysis

### 1. Laches and Waiver.

Although the RTC indicated in its motion that it wished the court to strike the affirmative defenses of laches and waiver, it did not present any discussion or case authority addressing these defenses, nor have the defendants addressed them in any substantive way in their responses. The movant has the burden of demonstrating why a particular defense should be stricken. Having failed that burden, the RTC's motion is denied as to the defenses of laches and waiver.

### 2. Indemnification and Set-off.

 As discussed above, these affirmative defenses are in reality claims against the assets of the failed financial institution and therefore come under the language of 12 U.S.C. § 1821(d)(13)(D), which removes such claims from the jurisdiction of the court until such time as the administrative claims process has been completed. As the administrative process has not been completed, the court lacks jurisdiction to hear these issues, regardless of whether they are couched in terms of counterclaim or affirmative defense. Accordingly, the RTC's motion to strike is granted as to the

---

**7.** Defense # 8 by Director Defendants (Youngblood, Barge, Brodnax, Cannon, and Eros); defense # 15 by Defendant Tansey.

**8.** Defense # 8 by Director Defendants; defense # 3 by Adcock; defense # 16 by Tansey.

**9.** Defense # 8 by Director Defendants; defense # 3 by Adcock; defense # 17 by Tansey.

**10.** Defense # 9 by Director Defendants; defense # 7 by Tansey.

**11.** Defense # 9 by Director Defendants; defense # 7 by Tansey.

**12.** Defense # 9 by Director Defendants.

**13.** Defense # 9 by Director Defendants; defense # 8 by Tansey.

**14.** Defense # 11 by Director Defendants; defense # 6 by Adcock; defense # 5 by Tansey.

**15.** Defense # 12 by Director Defendants; defense # 4 by Tansey.

**16.** Defense # 13 by Director Defendants; defense # 9 by Adcock; defense # 11 by Tansey.

**17.** Defense # 14 by Director Defendants.

**18.** Defense # 15 by Director Defendants.

**19.** A motion to strike a defense from an answer is to be filed within 20 days of service of the answer. Fed.R.Civ.P. 12(f). Also, if a defense is insufficient as a matter of law, no amount of factual development of the issue will save it; it is preferable to avoid the expense of discovery for both sides in issues as to which there is no viable dispute. *See, e.g., FDIC v. Berry,* 659 F.Supp. 1475, 1478–79 (E.D.Tenn.1987).

affirmative defenses of indemnification and set-off.

### 3. Remaining Affirmative Defenses— The "No–Duty" Rule.

■ As a preliminary matter, the court finds that federal common law, as opposed to state law, applies to this case.

The first step in the analysis, determining whether federal law applies in the first instance, need not long detain us. Aside from the fact that the Supreme Court has already held in *D'Oench, Duhme & Co. v. FDIC*, [315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) ], that federal law controls the rights and obligations of the FDIC, the FDIC operates under authority derived from a specific statutory scheme passed by Congress in exercise of a "constitutional function or power" to protect and stabilize the national banking system. Hence, federal law applies.

... [T]he nature of the FDIC as insuror for a variety of banks across the country and the necessity for overnight decisions in dealing with a failed bank requires a uniform federal rule governing the FDIC's rights.

*Gunter v. Hutcheson*, 674 F.2d 862, 869 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). This reasoning regarding the FDIC, as well as any other FDIC case authority relied upon in this order, applies with equal force to the RTC. *See* 12 U.S.C. § 1441a(b)(5)(A).

Parties on both sides of this action have cited a great deal of case authority in support of their respective positions. One critical distinction, however, appears to have eluded the defendants. That distinction involves the dual capacities in which the RTC may act. Congress has authorized the RTC to act both in a corporate capacity, as an insurer or regulator, and in a separate capacity as a receiver. *FDIC v. Harrison*, 735 F.2d 408, 412 (11th Cir.1984), *reh'g denied en banc*, 768 F.2d 1353 (1985). This distinction has been otherwise described as "sovereign" versus "proprietary" capacity. *Id.* at 411. In its sovereign capacity, the government carries out unique governmental functions for the benefit of the whole public; in its proprietary capacity, the government's activities are more analogous to a private concern. *Id.*

■ This distinction is critical because, as numerous courts have recognized, acts of the RTC in its corporate, or proprietary, capacity may be open to various affirmative defenses, whereas the RTC's acts in its receivership, or sovereign, capacity are shielded from such scrutiny. The court finds nothing in the record to indicate that the RTC is proceeding in this action in anything other than a sovereign capacity. The RTC indicates that it is proceeding as receiver; the great weight of the defendants' affirmative defenses relate to actions of the RTC taken in its receivership capacity.[20]

■ As a receiver, the RTC's duty "to collect on assets of a failed institution runs to the public and not to the former officers and directors of the failed institution." *FDIC v. Greenwood*, 719 F.Supp. 749, 750 (C.D.Ill.1989). *See also RTC v. Scaletty*, No. 92–1101–K, 1992 WL 276628, 1992 U.S.Dist. LEXIS 15424 (D.Kan. Sept. 30, 1992); *RTC v. Kerr*, 804 F.Supp. 1091, (W.D.Ark.1992); *RTC v. Greenwood*, 798 F.Supp. 1391 (D.Minn.1992); *FSLIC v. Shelton*, 789 F.Supp. 1367 (M.D.La.1992); *FDIC v. Isham*, 782 F.Supp. 524 (D.Colo. 1992); *FDIC v. Crosby*, 774 F.Supp. 584 (W.D.Wash.1991); *FDIC v. Stanley*, 770 F.Supp. 1281, 1307 (N.D.Ind.1991); *FDIC v.*

**20.** There are indications that the defendants also intend to argue that they justifiably relied upon representations, statements, or conduct by the RTC or FSLIC prior to receivership. However, the RTC owes no duty to officers and directors arising out of regulatory activity. *FDIC v. Crosby*, 774 F.Supp. 584 (W.D.Wash. 1991); *FSLIC v. Burdette*, 696 F.Supp. 1183, 1189 (E.D.Tenn.1988). Furthermore, any affirmative defenses based upon pre-receivership regulatory conduct would have to be asserted against the RTC in its corporate capacity, which is not a party before this court; accordingly, those claims do not constitute proper affirmative defenses. *See Burdette; see also FDIC v. Eckert Seamans Cherin & Mellott*, 754 F.Supp. 22, 25 (E.D.N.Y.1990) ("the assertion of any claim based on FDIC's conduct in its corporate capacity may not be asserted against FDIC as a receiver of the bank.").

*Stuart,* 761 F.Supp. 31 (W.D.La.1991); *FDIC v. Baker,* 739 F.Supp. 1401 (C.D.Cal. 1990); *FSLIC v. Burdette,* 696 F.Supp. 1183 (E.D.Tenn.1988); *FDIC v. Carlson,* 698 F.Supp. 178 (D.Minn.1988); *FSLIC v. Roy,* No. JFM–87–1227, 1988 WL 96570, 1988 U.S.Dist. LEXIS 6840 (D.Md.1988).

▮ When a savings and loan fails and the RTC is appointed receiver, "it is important to the public that the receiver rapidly and efficiently convert the assets of that institution to cash to repay the losses incurred by the insurance fund and the depositors for deposits not covered." *FSLIC v. Burdette,* 718 F.Supp. 649, 663 (E.D.Tenn.1989); *see also Gunter v. Hutcheson,* 674 F.2d 862, 869 (11th Cir. 1982) (". . . decisions concerning the appropriate method of dealing with a bank failure must be made with extraordinary speed if the going concern value of the failed institution is to be preserved."). This interest in speed means that different concerns are involved in RTC decisionmaking than would be the case in a savings and loan operating under normal conditions. Accordingly, it is in the public interest that the RTC be able to pursue its tasks without being subject to criticism by former officers and directors of the failed institution, endowed with 20/20 hindsight.

> Suits by the FSLIC as a receiver to recover assets, or to recover damages for wrongdoing, should not be encumbered by an examination in court of the correctness of any specific act of the FSLIC in its receivership. The rule that there is no duty owed to the institution or wrongdoers by the FSLIC/Receiver is simply a means of expressing the broad public policy that the banking laws creating the FSLIC and prescribing its duties are directed to the public good, and that every separate act of the FSLIC as a receiver in collecting assets is not open to second-guessing in actions to recover damages from wrongdoing directors and officers. If there is no wrongdoing by the officers or directors, there can be no liability, but if wrongdoing is established, the officers or directors should not be allowed to set up as a defense a claim that would permit the detailed examination of the FSLIC's action as a receiver.

*FSLIC v. Burdette,* 718 F.Supp. 649, 663 (E.D.Tenn.1989). *See also FDIC v. Lowe,* —— F.Supp. ——, No. 90–C–388W (D.Utah Feb. 26, 1992) (". . . public policy militates against judicial second-guessing of FDIC's actions or requiring the public at large to bear the costs of FDIC dealing with the intricacies or disposing of the assets of a failed bank."). The focus thus is appropriately on the conduct of the defendants. The actions of First Federal's receiver are not relevant. *RTC v. Scaletty,* No. 92–1101–K, 1992 WL 276628, 1992 U.S.Dist. LEXIS 15424 (D.Kan. Sept. 30, 1992).[21]

The defendants contend that the RTC's "no-duty" argument is irrelevant because their affirmative defenses do not actually require a duty, but instead merely limit the amount of damages recoverable by the plaintiff. This argument was accepted in *FDIC v. Ashley,* 749 F.Supp. 1065 (D.Kan. 1990), but has been otherwise rejected. The *Ashley* decision was based on Kansas state law, which differs from Georgia law; the weight of authority is that the defenses in question do not apply in the absence of a duty. *E.g., FDIC v. Crosby,* 774 F.Supp. 584, 587 (W.D.Wash.1991); *FDIC v. Eckert Seamans Cherin & Mellott,* 754 F.Supp. 22, 26 (E.D.N.Y.1990); *FDIC v. Baker,* 739 F.Supp. 1401, 1407 (C.D.Cal.1990). Further, another Kansas court has specifically rejected the *Ashley* approach, stating that it ran contrary to the weight of authority and public policy, that it did not take into account the jurisdictional limitations of 12 U.S.C. § 1821(d)(13)(D), and that it failed to acknowledge the alternative argument of sovereign immunity. *RTC v. Scaletty,* No. 92–1101–K, 1992 WL 276628, 1992 U.S.Dist. LEXIS 15424 (D.Kan. Sept. 30, 1992).

---

**21.** *Cf. FDIC v. Cherry, Bekaert & Holland,* 742 F.Supp. 612, 615 (M.D.Fla.1990) (in allowing affirmative defenses of contributory negligence and failure to mitigate, court relied on the fact that the FDIC had stepped out of its role as a receiver and was acting in its corporate role as an assignee).

██ Government agencies are shielded by sovereign immunity, except to the extent such is waived by the Federal Tort Claims Act ("FTCA") or by other federal statute. The defendants contend that in filing this action, the RTC has waived sovereign immunity to the affirmative defenses asserted. In light of the policy concerns articulated above, however, courts have held that the affirmative defenses at issue in this case are inconsistent with the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a). FIRREA charges the RTC with the efficient disposition of the assets of failing institutions, and grants the RTC discretion in implementing that goal. *See* 12 U.S.C. §§ 1441a(b)(3), 1821(h). Accordingly, the analogy to the FTCA and the resulting argument that sovereign immunity has been waived are inapposite. *E.g., Scaletty, supra; FDIC v. Crosby,* 774 F.Supp. 584, 587 (W.D.Wash.1991).

Defendants also contend that their affirmative defenses relate to proximate cause, in that they should not be held liable for that portion of damages which the RTC may be found to have caused or aggravated by its own conduct and decisionmaking. While such an argument might have some force in an ordinary tort case, "this is not an ordinary tort case. Rather it is one which arises within a special context, invoking special considerations of public policy." *FSLIC v. Roy,* No. JFM–87–1227, 1988 WL 96570, 1988 U.S.Dist. LEXIS 6840 (D.Md. 1988).

The argument that the affirmative defenses at issue here should not be stricken because they are relevant to causation has been specifically rejected by numerous courts:

> Banking is a business which directly affects the public welfare, and the law places a heavy duty upon the officers and directors of banking institutions to manage their affairs properly. If officers and directors have negligently recommended and approved a significant number of loans in their institution's portfolio ..., they have breached this duty. One of the proximate results of this breach is that FSLIC must assume at least some degree of control over the affairs of the institution. That is the only causal connection which may properly be required by application of the doctrine of proximate cause.... FSLIC owes no duty to those institutions or to those whose negligence has brought them to the brink of disaster.... [N]othing could be more paradoxical or contrary to sound policy than to hold that it is the public which must bear the risk of error of judgment made by its officials in attempting to save a failing institution—a risk which would never have been created but for defendants' wrongdoing in the first instance.

*FSLIC v. Roy,* No. JFM–87–1227, 1988 WL 96570, 1988 U.S.Dist. LEXIS 6840 (D.Md. 1988). *See also FDIC v. Isham,* 782 F.Supp. 524 (D.Colo.1992); *FSLIC v. Shelton,* 789 F.Supp. 1367 (M.D.La.1992); *FDIC v. Eckert Seamans Cherin & Mellott,* 754 F.Supp. 22 (E.D.N.Y.1990); *FDIC v. Greenwood,* 719 F.Supp. 749 (C.D.Ill. 1989); *FDIC v. Carlson,* 698 F.Supp. 178 (D.Minn.1988); *FDIC v. Renda,* 692 F.Supp. 128 (D.Kan.1988).

██ Further, claims relating to proximate cause are not appropriately raised as affirmative defenses, as proximate cause is an element of the plaintiff's prima facie case and therefore is already in issue. *FDIC v. Renda,* 692 F.Supp. 128, 133 (D.Kan.1988). It should be noted that the RTC must still establish that the defendants' conduct was the proximate cause of the injury claimed in order to prevail at all; the defendants are free to assert crossclaims against one another or to implead those third parties who they believe should bear responsibility for the losses allegedly incurred by First Federal. However, under the "no-duty" rule, the RTC's conduct is not on trial, whether under the label of proximate cause or affirmative defense. *RTC v. Greenwood,* 798 F.Supp. 1391 (D.Minn.1992).

Finally, the defendants contend that public policy weighs in favor of their being able to assert these affirmative defenses. They argue that to allow the RTC to continue this litigation without any examination

of whether they exercised due care in disposing of First Federal's assets would undermine the statutory goal of maximizing recovery in receivership situations, and that allowing the RTC free rein to impose multi-million-dollar liability on former officers and directors of failed financial institutions is an unfair surprise and will discourage qualified people from taking positions of responsibility in the savings and loan industry. Although the result may seem somewhat harsh, the Congressional policy in favor of allowing the RTC to conduct its receivership duties free of second-guessing by former officers and directors is clear and well-established.

> When an individual becomes an officer or director of a savings and loan, they [sic] are aware that if that institution becomes insolvent, federal banking laws and regulations require that a receiver be appointed.... This is a fact any officer or director should be aware of. Consequently, a director or officer of a failed savings and loan should not be entitled, and should not be surprised by an inability, to examine the conduct of a receiver of a failed institution in an attempt to reduce the recovery of the receiver in subsequent civil actions by the receiver.

*FSLIC v. Burdette,* 718 F.Supp. 649, 664 (E.D.Tenn.1989); *see also FDIC v. Cherry, Bekaert & Holland,* 129 F.R.D. 188, 195–96 (M.D.Fla.1989) ("[S]econd-guessing the efforts of the FDIC in carrying out its duties with respect to marshaling the assets of a failed institution is against public policy, whether couched in terms of contributory negligence, proximate cause, or mitigation of damages.").

Accordingly, for all of the foregoing reasons, the court grants the plaintiff's motion to strike the defendants' affirmative defenses of estoppel, negligence, contributory negligence, comparative negligence, assumption of risk, acts or omissions by RTC or its predecessors, commercially unreasonable actions by RTC or its predecessors, and failure to mitigate damages.

## CONCLUSION

The court GRANTS the plaintiff's motion to dismiss the defendants' counterclaims for lack of subject matter jurisdiction [18–1]. The defendants' motion for leave to file a surreply regarding the motion to dismiss [49–1] and plaintiff's motion for leave to file a reply to the surreply regarding the motion to dismiss [51–1] add nothing new, are cumulative of the arguments presented in earlier pleadings, and are therefore DENIED.[22] The plaintiff's motion to supplement its motion to strike [55–1] is unopposed and is therefore GRANTED. L.R. 220–1(b)(1), N.D.Ga. The defendants have requested oral argument on the plaintiff's motion to strike; that request [34–1] is DENIED.

The plaintiff's motion to strike [22–1] is GRANTED IN PART and DENIED IN PART. The court grants the plaintiff's motion and orders stricken Affirmative Defenses # 8 (except for laches and waiver), 9, 11, 12, 13, 14, and 15 of the Director Defendants; Affirmative Defenses # 3 (except for waiver), 6 and 9 of defendant Adcock; and Affirmative Defenses # 4, 5, 7, 8, 11, and 17 of defendant Tansey. The plaintiff's motion is denied as to the defenses of laches and waiver in the Director Defendants' Affirmative Defense # 8 and defendant Adcock's defense # 3, and as to Affirmative Defenses # 15 and 16 of defendant Tansey.

IT IS SO ORDERED.

---

**22.** "Although a reply by the movant shall be permitted, it shall not be necessary for the movant to file a reply as a routine practice.... No

further briefs may be filed by the parties, except upon order of the Court." L.R. 220–1(b)(2), N.D.Ga.