**FEDERAL DEPOSIT INSURANCE COR-PORATION, as receiver of New Bank of New England, Plaintiff,**

v.

**Bruce A. BARNABY, Defendant.**

Civ. No. 90–208–B–C.

United States District Court, D. Maine.

Oct. 22, 1993.

Thomas A. Cox, Einar G. Andersen, Laurie B. Perzley, Friedman & Babcock, Portland, ME, for FDIC.

Glen L. Porter, Eaton, Peabody, Bradford & Veague, Bangor, ME, Robert E. Murphy, Jr., Wadleigh, Starr, Peters, Dunn & Chiesa, Manchester, NH, for defendant Bruce A. Barnaby.

Gerald F. Petruccelli, Petruccelli & Martin, Portland, ME, for Bank of New England.

GENE CARTER, Chief Judge.

## MEMORANDUM OF DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This case arose out of Plaintiff Federal Deposit Insurance Corporation ("FDIC")[1] seeking to collect on a debt guaranteed by Defendant Bruce A. Barnaby. The Court now has before it Plaintiff's Motion for Summary Judgment, and accompanying Memorandum of Law, filed on June 11, 1993 (Docket Nos. 56, 57). The Court acts on this Motion on the written submissions of the parties.

## SUMMARY JUDGMENT

A motion for summary judgment must be granted if "[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court of Appeals for the First Circuit has aptly articulated the legal standard to be applied in deciding motions for summary judgment:

> [T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett,* 477 U.S. 317, 325[, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248[, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904[, 96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson,* 477 U.S. at 248[, 106 S.Ct. at 2510]; *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns

---

1. Bank of New England, N.A. ("BNE") originally brought the Complaint commencing this action in this Court on August 1, 1990. Prior to January 6, 1991, BNE was a national banking association doing business in the Commonwealth of Massachusetts. On that date, the Comptroller of the Currency of the United States of America, acting pursuant to 12 U.S.C. section 191, found BNE to be insolvent and thereupon appointed the FDIC as receiver of BNE. *See* 12 U.S.C. § 1821(c)(2). As Receiver, the FDIC succeeded to all rights, titles, powers, and privileges of BNE.

The FDIC caused the so-called "bridge bank" entitled New Bank of New England ("NBNE") to be chartered to provide BNE banking services on a continuing basis. On July 13, 1991, this entity was dissolved by the FDIC.

differing versions ·of the truth which a · factfinder must resolve at an ensuing trial' *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

> ·[T]here is no issue for trial unless there is sufficient evidence favoring the non-·moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or significantly proba-tive, summary judgment may be grant-ed.

*Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

*Brennan v. Hendrigan,* 888 F.2d 189, 191–92 (1st Cir.1989).

## I. FACTS

The Court finds the following facts to be undisputed on the record made on the mo-tion. This suit was commenced on August 1, 1990, by the former Bank of New England, N.A. ("BNE"). Complaint (Docket No. 1). The two original Defendants were Donald G. Bean, Jr. and Bean & Conquest, Inc. ("B & C"). BNE's original claims were based upon breach of contract arising from floor plan financing provided by BNE to a New Hamp-shire Auto dealer, Hampton Motor Co., Inc. ("Hampton"). Bean and B & C were named as Defendants because each had executed separate guaranties of payment of the obli-gations of Hampton. Complaint Exhibits C and E. Bean and B & C filed a joint An-·swer, with affirmative defenses, as well as a Third–Party Complaint asserting claims against Hampton and Barnaby. Answer (Docket No. 6). Barnaby, an officer of Hampton, had also executed a guaranty of payment of the obligations of Hampton. Af-fidavit of Norvel Bethel (Docket No. 66) Ex-hibit F.

Barnaby answered the Third–Party Com-plaint and asserted counterclaims against Bean and a cross-claim against Hampton. Barnaby Answer (Docket No. 14). On No-vember 13, 1990, Hampton answered the Third–Party Complaint and asserted a cross-claim against BNE. Hampton Answer (Docket No. 15). Thereafter, BNE filed its answer to Hampton's cross-claim, together with separate counterclaims against Hamp-ton and Barnaby. BNE Answer (Docket No. 22).

BNE's counterclaim against Barnaby ·is based on his execution of a Guaranty of payment for the floor plan financing for Hampton Motors. BNE's claim against Hampton was based on a Dealer's Inventory Security Agreement and Security Agreement Trust Receipts executed by Hampton in fa-vor of BNE. Bethel Aff. (Docket No. 66) Exhibits D and E. The Security Agreement gave BNE a security interest in Hampton's motor vehicle inventory, and the proceeds thereof upon sale. The Security Agreement required Hampton to pay the balance due on each item of inventory upon sale, or to place the proceeds from the sale of that item of inventory into an account for BNE's benefit. On December 14, 1990, Barnaby· filed his answer to BNE's counterclaim and asserted affirmative defenses therein (Docket No. 27).

On December 31, 1990, Bean filed a peti-tion under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* On April 1, 1991, this case was referred to the Bankrupt-cy Court (Docket No. 38). On November 2, 1992, the Bankruptcy Court granted FDIC's, Motion to Substitute for BNE in the Bank-ruptcy Court. The FDIC also filed Motions to Sever and to Remand the Counterclaim of the former BNE against Third–Party Defen-dant Barnaby to the United States District Court for the District of Maine (Docket No. 43). The Bankruptcy Court granted FDIC's Motion to Sever the Counterclaim against Barnaby and remanded it to this Court (Docket No. 43). The counterclaim by FDIC against Barnaby is the subject of FDIC's Motion for Summary Judgment.

## II. DISCUSSION

### A. Liability on the Guaranty

In order for the FDIC to be entitled to summary judgment on Barnaby's Guaran-ty, it must be shown that there is a valid guaranty, that there has been a default of performance on the guaranteed obligation and on the guaranty, and that the moving party is entitled to damages as result of such default. Barnaby admits the validity of the Guaranty and the underlying Security Agree-

ment. Barnaby Answer (Docket No. 14) ¶ 14. Once the validity of the guaranty is established, the starting point for analysis of the rights and duties of the creditor *vis-a-vis* its guarantors is the guaranty agreement. By the express terms of that Agreement, Barnaby unconditionally guaranteed payment of the amounts due under the Security Agreement Trust Receipts upon demand by the bank in the event of the debtor's default on the underlying Security Agreement. Bethel Aff. Exhibit F.

On July 16, 1990, BNE discovered that 14 trucks were missing from Hampton's lot, and that neither the trucks nor the proceeds thereof had been accounted for by Hampton. Bethel Aff. ¶ 11. The failure by Hampton to account for the inventory and make payments of principal and interest when due constitute defaults under the Security Agreement. On July 17, 1990, BNE sent a letter to Hampton by which BNE exercised its option under the Security Agreement and declared that all sums due under the terms of the Security Agreement were immediately due. Complaint Exhibit B. BNE also sent a copy of the letter to Barnaby by virtue of the Guaranty executed by him. Bethel Aff. Exhibit H.

The documents in this case, including the Security Agreement and the Guaranty, contain a choice-of-law provision indicating that the parties intended Massachusetts law to apply. The Court will accept this provision as controlling. *See, e.g., D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.,* 315 U.S. 447, 447, 62 S.Ct. 676, 687, 86 L.Ed. 956 (1942) (Jackson, J., concurring) ("[M]any questions as to the liability of parties to commercial paper which comes into the hands of the [FDIC] will best be solved by applying the local law with reference to which the [parties] presumably contracted."). *See also* Restatement (Second) of the Conflicts of Laws § 187(2)(a) (Supp.1988) (favoring enforcement of the parties' contractual choice unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice . . ."). The Guaranty does not require the bank to exhaust its remedies against the principal debtor before seeking satisfaction against the guarantor. Moreover, the Guaranty is governed by Massachusetts law which specifically provides that where payment is guaranteed, the guarantor agrees to pay "without resort by the holder to any other party." Mass.Gen.L. ch. 106, § 3–416.

■ Demand has been made upon Barnaby for payment and none has been made to satisfy his obligation under the Guaranty. Bethel Aff. ¶ 11–14. Therefore, the Court finds that Plaintiff has established its affirmative case for Defendant's liability based on the Guaranty.

### B. Affirmative Defenses

Defendant raised numerous affirmative defenses to the original BNE counterclaims.[2] The FDIC asserts that this Court is without subject matter jurisdiction over Defendant's affirmative defenses because Defendant failed to comply with the requirements of the administrative claims procedure of 12 U.S.C. § 1821(d). Memorandum of the Plaintiff, FDIC, in Support of Motion for Summary Judgment (Docket No. 57) at 7–9. Defendant makes no arguments to the contrary.[3]

---

2. The affirmative defenses raised by Barnaby include: accord and satisfaction; estoppel; set off; failure of consideration; and failure to mitigate damages. Answer of Bruce A. Barnaby to Counterclaim of Bank of New England, N.A. (Docket No. 27) ¶¶ 6–12. Barnaby also adopted and incorporated by reference into his affirmative defenses, Hampton's cross-claim against BNE which included the following claims: breach of good faith and fair dealing; equitable estoppel; promissory estoppel; tortious interference with contractual relations; intentional misrepresentation; reckless misrepresentation; negligent misrepresentation; fraudulent misrepresentation; punitive damages; breach of fiduciary duty; and RICO. Answer and Affirmative Defenses of Hampton Motor Co., Inc. and Cross–Claim of Hampton Motor Co., Inc. against Bank of New England, N.A. (Docket No. 15) ¶¶ 1–84.

3. It is unclear to this Court exactly what Defendant's position is with regard to his defenses and counterclaims. Defendant's Memorandum states:

[F]or purposes of this Objection and Memorandum of Law, Barnaby concedes and agrees that the succession of interest from Bank of New England to the FDIC and the remaining viability of the Bean, Bean & Conquest, and Hampton Motors, Co. defenses is not in issue.

■ The Court of Appeals for the First Circuit has held that section 1821(d)(13)(D) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") establishes a mandatory administrative claims review process. *See Marquis v. Federal Deposit Insurance Corp.,* 965 F.2d 1148, 1151 (1st Cir.1992). "The claims determination procedure ... creates a system which ... enables the FDIC to dispose of the bulk claims against failed financial institutions expeditiously and fairly." H.Rep. No. 101–54(I), 101st Cong., 1st Sess. 1 at 419, *reprinted in* 1989 U.S.Code Cong. & Ad. News 86, 215. Under FIRREA this Court's subject matter jurisdiction over claims against FDIC as receiver, or against failed banks for which FDIC is liable, is governed in part by 12 U.S.C. section 1821(d)(13)(D). Section 1821(d)(13)(D) deprives the Court of subject matter jurisdiction over two categories of claims (into one of which the affirmative defenses to the counterclaim of Plaintiff against third-party Defendant Barnaby fall), unless the claim has been submitted to the mandatory administrative claims process prescribed by 12 U.S.C. § 1821(d)(3)–(10).[4]

■ This Court finds that subsection 1821(d)(13)(D) of FIRREA, which the Court has applied to claims and counterclaims asserted against the FDIC, also applies to affirmative defenses raised against the FDIC. *See Federal Deposit Insurance Corp. v. Updike Brothers, Inc.,* 814 F.Supp. 1035 (D.Wyo.1993); *Federal Savings and Loan Insurance Corp. v. Shelton,* 789 F.Supp. 1367, 1371 (M.D.La.1992); *Federal Savings and Loan Insurance Corp. v. McGinnis, Juban, Bevan, Mullins & Patterson, P.C.,* 808

F.Supp. 1263, 1280 (E.D.La.1992); *Resolution Trust Corp. v. Youngblood,* 807 F.Supp. 765, 768–69, 770–71 (N.D.Ga.1992) ("affirmative defenses" of indemnification and set off stricken; court was without jurisdiction to hear issues of indemnification or set off, regardless of whether couched as counterclaims or affirmative defenses); *Talmo v. Federal Deposit Insurance Corp.,* 782 F.Supp. 1538, 1542 (S.D.Fla.1991) ("failure of consideration" defense constitutes an action seeking a determination of rights to the assets of" a failed bank relating to an act or omission of a failed bank because it seeks to eliminate or reduce counterdefendants' debt). *But see Resolution Trust Corp. v. Conner,* 817 F.Supp. 98 (W.D.Okla.1993) (affirmative defenses were not within the statutory meaning of "claims" over which the court lacked jurisdiction). The Corporation as receiver is required to publish a "notice to the depository institution's creditors to present their claims, together with proof" to the receiver by a published deadline, which may not be less than 90 days from the date of publication, 12 U.S.C. § 1821(d)(3)(B), and to mail a similar notice to any creditor shown on the institution's books. 12 U.S.C. § 1821(d)(3)(C). The FDIC complied with the statutory notice requirements in the instant case. Affidavit of Miles Rice (Docket No. 60) ¶ 3. The affirmative defenses and counterclaims here at issue were already identified and asserted against BNE's claims. Once FDIC succeeded to BNE's claims and became a party-plaintiff in the case, they became identifiable claims against the FDIC subject to the mandatory administrative

---

Barnaby concedes that the *D'Oench Duhme* Doctrine cited and statutory authority relied upon by the FDIC prevents him from pursuing those counterclaims and defenses. Nevertheless, there remain contract defenses and contract interpretation that require further proceedings in this matter. Defendant's Memorandum of Law in Opposition to Motion for Summary Judgment (Docket No. 64) at 2. Although Defendant asserts that some contract defenses remain viable, he fails to respond to FDIC's statutory argument regarding this Court's lack of subject matter jurisdiction over the affirmative defenses and counterclaims.

4. Section 1821(d)(13)(D) states in pertinent part:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—
(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
(ii) any claim relating to any act or omission of such institution or the corporation as receiver.

The "[e]xcept as otherwise provided in this subsection" language clearly encompasses the mandatory administrative claim process described in section 1821(d)(3)–(10) of the statute.

claims process prescribed in Section 1821(d).[5] Because Defendant failed to avail himself of the administrative claims process, having had the opportunity to do so, this Court is without subject matter jurisdiction over Defendant's affirmative defenses and counterclaims. *See* Rice Aff. ¶ 4.

### C. Sum Certain

█ Although FDIC has established Defendant's general liability on the Guaranty, the FDIC has failed to establish a sum certain for which Defendant is liable. The total amounts of obligations on the Security Agreement Trust Receipts do not square facially with the total amount claimed by the FDIC to be owed. *Compare* Bethel Aff. Exhibits E *with* Bethel Aff. Exhibit I. Specifically, the principal amount owed from the face value of the Security Agreement Trust Receipts is $666,258.81, and the principal amount included in the accounting by the FDIC in support of its claim is $426,037.00.[6] No materials of evidentiary quality were provided by FDIC to explain the basis for the disparity between the two amounts. Therefore, the Court is unable to determine from the evidence presented by the FDIC what amount is owed by Barnaby based on the Security Agreement Trust Receipts.

### D. Attorneys' Fees

FDIC has also requested reimbursement for the legal fees incurred in connection with this collection action. Defendant contends that the Guaranty provides for liability on wholesale advances, and expressly excludes any agreement to pay for interest or attorneys' fees. Defendant relies on the typewritten addition to the form agreement, which was initialed by two witnesses and the Defendant, providing "[t]his guarantee pertinent to wholesale advances only." That provision, it is asserted, should be interpreted by the

Court to mean that the parties intended the Guaranty to include only wholesale advances.

█ As stated above, the Guaranty in this case is controlled by Massachusetts law. The issue of whether contract language is ambiguous is a question of law under Massachusetts law. *See Boston Five Cents Savings Bank v. Secretary of the Department of Housing and Urban Development,* 768 F.2d 5, 8 (1st Cir.1985). The Court finds that the language relied upon by Defendant does not create any ambiguity with regard to his liability for attorneys' fees or interest. The Guaranty provides that the Guarantor will indemnify the FDIC against "all losses in any way suffered, [or] incurred ... as a result of or in any way arising out of, or following, or consequential to transactions with [Hampton Motors]."

Accordingly it is hereby *ORDERED,* that

(1) Plaintiff's Motion for Summary Judgment be, and it is hereby, *GRANTED* on all liability issues herein and is *DENIED* on the assessment of damages issues;

(2) the matter be scheduled for a trial on damages as soon as the Court's calendar will permit; and

(3) the Clerk schedule a conference of the Court and counsel herein as soon as possible.

---

5. The Court notes, without expressing any opinion, that this interpretation of section 1821(d)(13)(D) may require parties who are not creditors of a failed depository institution and do not receive statutory notice of the requirement of and deadline for filing claims, who have no independent basis for bringing an action against the FDIC and against whom the FDIC has not brought suit, to present to the FDIC as receiver any potential defenses that they might have to

any claims that the FDIC might one day assert against them.

6. The Court also notes that affidavits filed in support of FDIC's Motion for Summary Judgment state that 14 vehicles were not accounted for when Hampton Motors was found to be in default. Yet, the FDIC now attempts to collect on 24 Security Agreement Trust Receipts.