**BANK OF THE OZARKS, Plaintiff**

v.

**Ishtiaq A. KHAN, M. Shailendra, Rahim Sabadia, Defendants.**

**Rahim Sabadia and Ishtiaq A. Khan, Counterclaim Plaintiffs**

v.

**Bank of the Ozarks, Counterclaim Defendant.**

**Rahim Sabadia and Ishtiaq A. Khan, Crossclaim Plaintiffs**

v.

**M. Shailendra, Crossclaim Defendant.**

**M. Shailendra, Crossclaim Plaintiff**

v.

**Rahim Sabadia and Ishtiaq A. Khan, Crossclaim Defendants.**

Civil Action No. 1:11–CV–2576–ODE.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 7, 2012.

---

Donald P. Boyle, Jr., John Joseph Richard, Taylor English Duma LLP, Atlanta, GA, for Bank of the Ozarks.

Seth Mills, Jr., Mills Paskert Divers, Richard J. Storrs, Mills Paskert Divers, Atlanta, GA, for Ishtiaq A. Khan, M. Shailendra, Rahim Sabadia.

James Johnson, Knight Johnson, LLC, Jennifer Auer Jordan, Bird Law Group, P.C., Atlanta, GA, for M. Shailendra.

## ORDER

ORINDA D. EVANS, District Judge.

This action to recover on a note is before the Court on Motions to Dismiss and a Motion to Strike Affirmative Defenses. This case involves a dispute among former business partners in various real estate investments. For the following reasons, Bank of the Ozarks' Motion to Dismiss Counterclaims and Strike Affirmative Defenses [Doc. 38] is GRANTED in part and DENIED in part. Rahim Sabadia and Ishtiaq Khan's Counterclaims against Bank of the Ozarks are barred by the *D'Oench Duhme* doctrine and that doctrine's codification in 12 U.S.C. § 1823(e) and must be DISMISSED. Sabadia and Khan's Affirmative Defenses of failure of consideration and fraud are insufficient as a factual and legal matter and are STRICKEN. Sabadia and Khan's Motion

for Leave to File Amended Answer and Counterclaim [Doc. 55] is DENIED. Sabadia and Khan's Motion to Dismiss Shailendra's Amended Crossclaim [Doc. 46] is DENIED. M. Shailendra's Motion for Summary Judgment [Doc. 69] is DISMISSED AS MOOT without prejudice to its renewal.

## I. *Procedural and Factual Background*

This original Complaint in this action [Doc. 1] was filed on August 4, 2011 by Bank of the Ozarks (the "Bank") against Ishtiaq Khan ("Khan"), M. Shailendra ("Shailendra"), and Rahim Sabadia ("Sabadia"), collectively referred to as "Defendants". The Complaint alleges that Defendants executed a promissory note in favor of Park Avenue Bank in the principal amount of $1,620,000 on October 23, 2008 as a renewal of a prior indebtedness (the "Note") [Doc. 1 at 3].[1] The Complaint further alleges that Defendants failed to make payments on the Note and failed to pay the Note by the maturity date of October 25, 2009 [*Id.* at 4].

On April 29, 2011, Park Avenue Bank was closed by the Georgia Department of Banking and Finance, and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver thereof [*Id.*]. On that same date, the FDIC and Bank of the Ozarks, plaintiff in this action, entered into a Purchase and Assumption Agreement, whereby Bank of the Ozarks purchased the loan documents at issue in this action. The Bank provided written notice of default to Defendants on July 30, 2011 [*Id.* at 5–6, Doc. 1–3].

In this action, the Bank alleges counts of breach of contract and unjust enrichment based on the failure to pay on the Note. The Bank seeks actual and compensatory damages as well as attorney's fees and expenses. The Court has diversity jurisdiction over these state law claims as the Bank was created under Arkansas law and has its principal place of business in Arkansas, Khan and Shailendra are both domiciled in Georgia, Sabadia is domiciled in California and the amount in controversy exceeds $75,000 [Doc. 1 at 2]. 28 U.S.C. § 1332.

On September 28, 2011 Sabadia and Khan jointly filed an Answer to the Complaint [Doc. 12], which they supplemented on October 24, 2011 [Doc. 21]. In the Answers, Sabadia and Khan assert the defenses of, *inter alia:* failure to state a claim, mutual departure, novation, failure of consideration, fraud, waiver, estoppel, setoff and recoupment, ratification, and failure to mitigate damages.

In support of the fraud defense, Sabadia and Kahn allege that they secured two loans from Park Avenue Bank. The first loan for $3,350,000 was executed on August 4, 2003 and was used to purchase a tract of land ("Loan One"). This note was secured by the tract of land and another tract of land bought on June 20, 2003.[2] Sabadia and Khan also obtained a second loan ("Loan Two") from Park Avenue Bank in the amount of $1,255,000 on July 19, 2004 which was used to purchase a third tract of land [*Id.* at 4]. This loan was secured by a security deed on this third tract of land.

---

1. At this stage of the proceedings, the Court must accept the well-pleaded factual allegations in the Complaint. *See Next Century Commc'ns Corp. v. Ellis,* 171 F.Supp.2d 1374, 1378 (N.D.Ga.2001) (Thrash, J.) ("In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and

construes them in the light most favorable to the plaintiff.") (citation omitted).

2. Sabadia and Khan allege that on June 20, 2003, they bought a tract of land which was paid for with approximately $512,000 cash [Doc. 21 at 3–4].

Unbeknownst to Sabadia and Khan, Park Avenue Bank also extended an unsecured line of personal credit to Shailendra, with a loan number ending 1181 [*Id.* at 5]. Sabadia and Khan allege that Shailendra and Park Avenue Bank, along with its officers, modified the security deed on the first and second tracts of land by increasing the indebtedness secured by a million dollars [*Id.* at 5]. When the tract of land originally bought June 20, 2003 was sold at a profit, the proceeds were not used to pay off Loans One and Two as required by the sale's title commitment [*Id.* at 5–6]. Instead, the proceeds were used to pay off only Loan One and were also used to pay $800,000 towards Shailendra's personal loan with the nearly $544,000 remaining deposited into Shailendra's personal checking account [*Id.* at 5–6]. Shailendra also kept for his personal use Sabadia and Khan's shares of the proceeds of the sale [*id.* at 6].

Sabadia and Khan allege that on October 25, 2006, Sabadia and Khan signed a renewal note which they believed renewed Loan Two and increased the principal amount of Loan Two from $1,255,000 to $1,800,000 (referred to a the "Renewal Loan") [Doc. 21 at 7]. The note evidencing this Renewal Loan is not part of the record. Sabadia and Khan allege that the document evidencing the Renewal Loan, unbeknownst to them, included two loan numbers as the loans they were renewing: Loan Two *and* Shailendra's personal loan [*Id.* at 7]. Thus, Sabadia and Khan allege they unwittingly became responsible for Shailendra's personal loan by signing this Renewal Loan. The Renewal Loan was allegedly disbursed as follows: $959,756.67 was used to pay off Shailendra's personal loan, $553,588.67 was used to pay off Loan Two and $215,000 was deposited into Shailendra's personal account [*Id.*].

In October 2008, the parties executed a renewal of the Renewal Loan for a total amount of $1,620,000 (the "Second Renewal Loan"). The loan number documented by the Note ends 9085; it does not reference Shailendra's personal loan [Doc. 1–1]. It is this Note evidencing the renewal on which the Bank sues in this action. The Second Renewal Loan Note purports to be used to "Renew loan for equity injection in investment" [*Id.*].

The Bank seeks to strike Sabadia and Khan's Affirmative Defenses, largely under the *D'Oench, Duhme* doctrine [Doc. 38]. Sabadia and Khan have responded in opposition to the Motion to Dismiss and Strike [Doc. 53], and the Bank has replied [Doc. 61].

Sabadia and Khan also jointly asserted a Counterclaim against the Bank [Doc. 21 at 16]. Sabadia and Khan allege in the Counterclaim that Park Avenue Bank owed them a fiduciary duty, but breached that duty by aiding and abetting their investment partner, Shailendra, in defrauding them. Sabadia and Khan's allegations describe instances in which Shailendra was allowed to endorse and apply checks made payable to corporate entities to his personal banking account [*Id.* at 17–18]. Sabadia and Khan also allege that Shailendra deposited checks made payable to Park Avenue Bank into his personal account, rather than the account of the drawer of the check [*Id.* at 18–19]. Sabadia and Khan also allege instances in which Shailendra transferred funds from corporate accounts to his personal accounts to cover his overdrafts [*Id.* at 20]. Sabadia and Khan seek declaratory relief and setoff and recoupment [Doc. 21 at 23–25]. The Bank seeks to dismiss Sabadia and Khan's Counterclaim under the *D'Oench, Duhme* doctrine [Doc. 38]. Sabadia and Khan have responded in opposition to this Motion to Dismiss [Doc. 53]. The Bank has replied [Doc. 61].

Sabadia and Khan also jointly asserted a Crossclaim and Amended Crossclaim against co-defendant Shailendra, for contribution, breach of fiduciary duty, fraud, punitive damages and attorney's fees [Docs. 12, 21 at 26–34]. Sabadia and Khan incorporate the pervious allegations and further assert with particularity the fraudulent statements which Shailendra made [Doc. 21 at 30].

Sabadia and Khan have filed a Motion for Leave to file a Second Amended Answer, Counterclaim, and Crossclaim [Doc. 55]. The Bank has responded in opposition to this Motion [Doc. 60].

Shailendra filed an Answer to the Complaint on September 28, 2011 [Doc. 14]. Shailendra has also filed a Crossclaim for indemnity against Sabadia and Khan [Id.]. In this Crossclaim, Shailendra alleges that he, Sabadia and Khan were partners in a general partnership [Doc. 14 at 11]. He further alleges the partnership engaged in investing in and developing real estate [Id.]. In the course of this partnership, the three partners agreed to an equal 1/3 interest in the real estate assets of the partnership and to share equally in partnership liabilities arising from the loan documents entered into by the partners [Id. at 12]. In this Crossclaim, Shailendra asserts that he is entitled to indemnification from Sabadia and Khan for liability arising from the loan documents which is greater than his 1/3 share [Id.]. Sabadia and Khan answered this Crossclaim [Doc. 39].

On December 23, 2011, Shailendra filed an Amended Crossclaim seeking attorney's fees from Sabadia and Khan based on their stubborn litigiousness and frivolous crossclaims against him [Doc. 41 at 10–11]. Sabadia and Khan jointly filed a Motion to Dismiss this Amended Crossclaim [Doc. 46] for failing to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Shailen-

dra has responded to this motion [Doc. 56]. Sabadia and Khan have not replied, and the time in which to do so has run. LR 7.1C, NDGa.

Also pending is Shailendra's Motion for Summary Judgment or, in the Alternative, Motion to Stay Amended Crossclaims [Doc. 69]. Shailendra sought summary judgment on Counts II–IV of Sabadia and Khan's Crossclaim against him. This motion has been disposed of by this Court's grant of the Consent Motion to Stay Cross–Claims filed by Khan, Sabadia and Shailendra which stays Count II of Shailendra's Amended Crossclaim and Counts II–V of Sabadia and Khan's Amended Crossclaim until related state court actions are resolved [Docs. 71, 85]. Accordingly, this Motion for Summary Judgment [Doc. 69] should be DISMISSED AS MOOT without prejudice to its renewal.

## II.  Standards of Review

### A.  Motions to Dismiss

The Federal Rules of Civil Procedure only require a short and plain statement of the claim showing that the pleader is entitled to relief. FED.R.CIV.P. 8(a). Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." In ruling on the pending motions to dismiss, all of the factual allegations of the claims must be accepted as true and construed in the light most favorable to the non-moving party. *Young Apartments, Inc. v. Town of Jupiter, Fla.,* 529 F.3d 1027, 1037 (11th Cir. 2008).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citations and internal quotation marks omitted). In other words, factual allegations of the claim "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted).

### B. *Motion to Strike*

"The court may strike from a pleading an insufficient defense...." FED.R.CIV.P. 12(f). Motions to strike are not favored in the federal rules. *Daugherty v. Firestone Tire & Rubber Co.,* 85 F.R.D. 693, 695 (N.D.Ga.1980) (Hall, J.). Rule 12(f) motions "should not be granted when the sufficiency of the defense depends upon disputed issues of fact or unclear questions of law." *Mathis v. Velsicol Chem. Corp.,* 786 F.Supp. 971, 974 (N.D.Ga.1991) (Murphy, J.). Generally, a court will not exercise its discretion to strike "unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.,* 881 F.Supp. 574, 576 (M.D.Fla. 1995). However, a defense that is clearly insufficient as a factual and legal matter "should be stricken to eliminate the unnecessary delay and expense of litigating it." *Resolution Trust Corp. v. Youngblood,* 807 F.Supp. 765, 769 (N.D.Ga.1992) (O'Kelley, J.).

### III. *Bank of the Ozark's Motion to Dismiss Counterclaim*

The Bank seeks to dismiss the Counterclaims against it as barred by the *D'Oench, Duhme* doctrine, as codified at 12 U.S.C. § 1823 [Doc. 38]. The Counterclaim is based on Park Avenue Bank's addition of Shailendra's personal loan to the Renewal Loan and its allowance of Shailendra's fraud. Sabadia and Khan seek a declaration that the Note evidencing the Second Renewal Loan is void and seek complete setoff and recoupment.

The doctrine announced in the United States Supreme Court's decision in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) holds that a debtor cannot avoid liability to the FDIC on a debt instrument from an insolvent bank by "claiming an unrecorded side agreement" which discharged the obligation. *Vernon v. Resolution Trust Corp.,* 907 F.2d 1101, 1105 (11th Cir.1990). In other words,

"In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records."

*Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 593 (11th Cir.1995) (quoting *OPS Shopping Center, Inc. v. FDIC,* 992 F.2d 306, 308 (11th Cir.1993)). This policy allows bank examiners, such as the FDIC, to rely solely on the bank's records in evaluating the worth of a bank's assets, which would be impossible to do with the speed required if bank records contained notes subject to undisclosed conditions. *Langley v. FDIC,* 484 U.S. 86, 91–92, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987) (citing *Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.1982)). It also ensures the consideration of unusual loan transactions by bank officials to prevent the fraudulent insertion of new terms when a bank ap-

pears headed for failure. *Langley*, 484 U.S. at 91, 108 S.Ct. 396. The protections of the *D'Oench Duhme* doctrine also apply to entities which obtain the assets of a failed bank through purchase and assumption agreements with the FDIC. *Bell & Murphy & Assocs. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 754–55 (5th Cir.1990). The *D'Oench Duhme* doctrine was codified at 12 U.S.C. § 1823(e), which provides that:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

*See Dunmar Corp.*, 43 F.3d at 593 (noting that 12 U.S.C. § 1823 is the "statutory counterpart" to *D'Oench Duhme*). Under Section 1823(e), the FDIC is protected from claims or defenses that are not documented in the failed bank's files. *See Baumann v. Savers Fed. Sav. & Loan Ass'n*, 934 F.2d 1506, 1515 (11th Cir.1991) ("[A] private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.").

Sabadia and Khan assert two counterclaims against the Bank. The first counterclaim is that the Note was obtained by fraud and should be declared null and void. The second counterclaim is for setoff and recoupment. Sabadia and Khan assert two arguments why their counterclaims should not be dismissed. First, they argue that they have sufficiently stated a claim for fraud in the factum, which is not barred by the *D'Oench Duhme* doctrine. *E.g., FDIC v. Deglau*, 207 F.3d 153, 171 (3d Cir.2000); *FDIC v. Giammettei*, 34 F.3d 51, 57 (2d Cir.1994); *In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1346 (1st Cir.1992). The Bank, argues that Sabadia and Khan have only asserted a claim for fraud in the inducement, which is barred by the *D'Oench Duhme* doctrine and Section 1823(e). *See Langley*, 484 U.S. at 93, 108 S.Ct. 396.

■■ The Court of Appeals for the Eleventh Circuit has distinguished between the two types of fraud, stating:

> fraud in the inducement consists of one party's misrepresenting a material fact concerning the subject matter of the underlying transaction and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action. On the other hand, fraud in the factum occurs when a party procures another party's signature to an instrument without knowledge of its true nature or contents.

*Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 994 (11th Cir.2012).

Fraud in the factum is fraud in which the party's signature to an instrument is made without knowledge of its true nature or contents or in which the party signs a document without knowledge of its character or essential terms. *Fed. Sav. & Loan Ins. Corp. v. Gordy*, 928 F.2d 1558, 1565 (11th Cir.1991). As explained by the Official Comment to the Uniform Commercial Code, cited to by *Langley*, 484 U.S. at 93, 108 S.Ct. 396, "The test of the defense [of fraud in the factum] ... is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge." U.C.C. § 3–305, Comment 7. The primary difference between these two types of fraud "lies in the parties' understanding of the contract into which they are entering." *Solymar Invs., Ltd.*, 672 F.3d at 995. "If a party understands the nature of the contract they are executing but contends that there has been some material misrepresentation as to the obligations rising thereunder, only a fraud in the inducement claim will lie." *Id.* In *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 1000 (11th Cir.1986), the Eleventh Circuit concluded that fraud in the factum voided a contract where defendants made a representation to clients who did not speak English that they were entering into a money market account agreement when the clients were actually investing in a different type of account with higher fees. However, in *Solymar Investments, Ltd.*, 672 F.3d at 995, where defendants had represented to plaintiffs that a settlement agreement the parties entered into was just one part of a comprehensive whole, those representations only amounted to fraud in the inducement.

The fraud Sabadia and Khan allege is the inclusion of nine numbers of the Shailendra loan account, ending in 1181, to the first Renewal Loan note that they signed. Sabadia and Khan were unaware that the inclusion of this account number made them responsible for Shailendra's personal loan. Sabadia and Khan also allege the Park Avenue Bank's vice president and Shailendra made material misrepresentations to them that the renewal loans were solely for the purpose of injecting equity into the business investments. These are the exact type of unrecorded agreements and representations that are unrecoverable under the *D'Oench Duhme* doctrine. These allegations arise only to fraud in the inducement. Sabadia and Khan believed that the Renewal Loan only renewed Loan Two when it actually renewed Loan Two and Shailendra's personal loan. They also believe it was to be used solely for business purposes, when it was allegedly distributed to Shailendra's bank account for personal use. The misrepresentations did not prevent Sabadia and Khan from understanding the nature of the contract they were executing. The written agreement, according to Sabadia and Khan's pleadings, contained the loan number of Shailendra's personal loan, even though Sabadia and Khan did not recognize it. Sabadia and Khan do not allege that the additional loan number was added after they signed the contract or that they were unaware that they were signing a loan renewal at all. *See FDIC ex rel. Rockbridge Commercial Bank v. CGS Partners, II, LLC*, No. 1:10–CV–526–TWT, 2011 WL 1790800, at *2 (N.D.Ga. May 9, 2011) (Thrash, J.) (fraud in the factum defense was not barred by *D'Oench Duhme* doctrine when signature on guarantee was forged). The oral representations that the loan would be used for business purposes also do not support a claim for fraud in the factum. The FDIC could

not have been aware of any oral misrepresentations when examining the failed bank's records. This is the type of side agreement that cannot be enforced against the FDIC and its successors under the *D'Oench Duhme* doctrine.

Sabadia and Khan also argue that their counterclaims fall within the statutory requirements of Section 1823(e) because of the statement on the face of the Note that it was solely purposed to inject equity into the business investments. Sabadia and Khan argue that this meets the requirements of Section 1823(e) because: it is based on the fraudulent statement in the written Note; the Note was executed by the disbursement of funds; the Note was approved by the Park Avenue Bank's board of directors or loan committee as evidenced by the bank's Vice President's signature on the Note; and the Note was in Park Avenue Bank's records. The fraud Sabadia and Khan allege is the Note's allegedly false statement that it was solely purposed to inject equity into the investment when it was actually used for Shailendra's personal debt obligations.

The requirements of Section 1823(e) are "categorical." *Langley,* 484 U.S. at 95, 108 S.Ct. 396. Sabadia and Khan have not established that they seek to enforce a written agreement to fall within the statutory requirements of Section 1823(e). An agreement, as used in Section 1823(e), can mean a condition upon performance. *Langley,* 484 U.S. at 91, 108 S.Ct. 396. The only written agreement Sabadia and Khan point to is the statement in the Note: "Purpose: The purpose of this loan is: Business: RENEW LOAN FOR EQUITY INJECTION IN INVESTMENT" [Doc. 1–1 at 2]. Sabadia and Kahn are incorrect that this statement can be read in conjunction with the bank's files regarding the

disbursement of the funds to constitute a written misrepresentation. *See FDIC v. O'Neil,* 809 F.2d 350, 352–53 (7th Cir.1987) ("implicit" agreement cannot be enforced against the FDIC–Corporation under § 1823(e)). Sabadia and Khan are also incorrect that the statement, read in conjunction with the inclusion of the loan number for Shailendra's personal loan in the Renewal Loan, constitute a written misrepresentation. The content of the Note is the only written agreement which can be enforced.

It is possible to assert a claim that the failed lending institution has not met obligations owed to the borrower if such an obligation is clearly evidenced by a written document "such that the [FDIC] would be aware of the obligation when conducting an examination of the institution's records." *Baumann,* 934 F.2d at 1515. The Eleventh Circuit has held that if a failed bank's records "reveal that the bank has agreed to certain additional obligations, then the *D'Oench* estoppel doctrine would not preclude a borrower's claim that the bank had not satisfied those additional obligations." *FDIC v. McCullough,* 911 F.2d 593, 600 (11th Cir.1990). To prevail on a claim that the failed bank had additional unfulfilled obligations, the borrower "must be able to point to documents that clearly manifested the bilateral nature of the parties' rights and obligations." *Id.* at 601. A bank's obligation or acceptance of condition of repayment must be explicit. *Fed. Sav. & Loan Ins. Corp. v. Two Rivers Assocs.,* 880 F.2d 1267, 1276 (11th Cir. 1989).

Sabadia and Khan have not pointed to documents that *clearly* manifest the bilateral nature of the parties' rights or expose obligations that Park Avenue Bank or its successors failed to perform. The statement on the Note that it was intended to

"renew loan for equity injection in investment" does not establish a bilateral obligation on the part of the lending institution. It does not require further action by the failed bank. The statement merely describes the parties' expectations of the purpose of the loan. This statement does not oblige Park Avenue Bank to assure the proper use of the funds. *Two Rivers Assocs.*, 880 F.2d at 1275–76 (bank record evidencing obligation to provide additional loan was not sufficient to show agreement to fund entire project); *McCullough*, 911 F.2d at 601 (memorandum and letters in bank files referencing alterations to mortgage were insufficient evidence of bank's obligation to transfer property or oil leases to borrower). The statement of purpose contained in the Note is not an explicit obligation and is not the type of agreement that has been sufficient to prevent operation of the *D'Oench Duhme* doctrine. *See Howell v. Cont'l Credit Corp.*, 655 F.2d 743, 746–47 (7th Cir.1981) (leases clearly manifested bank's obligation to make payments for purchase of broadcasting equipment).

Sabadia and Khan's counterclaims rely solely on the behavior of the failed bank, Park Avenue Bank. As such, Sabadia and Khan's Counterclaims against Bank of the Ozarks are barred by the *D'Oench Duhme* doctrine and that doctrine's codification in 12 U.S.C. § 1823(e) and must be DISMISSED.

### IV. Bank of the Ozark's Motion to Strike Affirmative Defenses

■ Bank of the Ozarks also contends that certain of Sabadia and Khan's Affir-

mative Defenses are insufficient as a matter of law under the *D'Oench Duhme* doctrine and moves to strike them.[3] Sabadia and Khan have asserted eleven Affirmative Defenses which the Bank moves to strike. There are two situations in which the *D'Oench Duhme* doctrine does not bar a defense raised by the debtor: when the defense is manifest on the face of the obligation the claimant seeks to enforce and when the borrower is a nonnegligent victim of fraud in the factum. *Vernon*, 907 F.2d at 1106 n. 4; *see also FDIC v. Turner*, 869 F.2d 270, 276 (6th Cir.1989). As noted, motions to strike are disfavored and may be granted only when it "appears to a certainty that plaintiff[ ] would succeed despite any state of the facts which could be proved in support of the defense." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir.1984), *vacated on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986) (quoting *Lehmann Trading Corp. v. J & H Stolow, Inc.*, 184 F.Supp. 21, 22–23 (S.D.N.Y.1960)).

■ Sabadia and Khan claim the Affirmative Defenses of; mutual departure,[4] novation, waiver, estoppel, setoff and recoupment and ratification, Sabadia and Khan do not specify in their pleadings or response on what or whose conduct these defenses are premised. If these defenses are based on actions or representations by Park Avenue Bank that do not meet the requirements of 12 U.S.C. § 1823(e) or fall within the narrow exceptions of the

3. The Bank does not move to strike the defenses of failure to state a claim upon which relief can be granted or that the Bank is not a holder in due course.

4.

Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.
O.C.G.A. § 13–4–4.

*D'Oench Duhme* doctrine, they may not be raised. Without development of the facts underlying these defenses, the Court cannot determine whether they are barred by the *D'Oench Duhme* doctrine as the Bank claims. At this juncture, the Court finds that the Bank's motion to strike these defenses should be denied because it has failed to show that it is plain that the defenses in issue can have no possible bearing on the subject matter of the suit. Moreover, the Bank has failed to show that it will be prejudiced by inclusion of these defenses. Accordingly, the Bank's Motion to Strike these defenses is denied.

■ Sabadia and Khan also claim the Affirmative Defense of failure of consideration. Failure of consideration must be premised on the acts of Park Avenue Bank at the time the contracts were entered into. *See* O.C.G.A. § 13–5–8 ("A condition, precedent or subsequent, not complied with, insufficiency or failure of consideration, or any act of the opposite party, by which the obligation of the contract has ceased, may be pleaded as a defense."). Defenses premised on failure of consideration are precluded by *D'Oench Duhme* and its progeny. *See McCullough*, 911 F.2d at 600. Accordingly, the Bank's Motion to Strike this defense is granted.

The Bank furthermore moves to strike Sabadia and Khan's Fifth Affirmative Defense of fraud. The facts underlying this defense are fully developed in the pleadings and response. As discussed, *supra,* the only fraud alleged by Sabadia and Khan is fraud in the inducement. The defense of fraud in the inducement is precluded by *D'Oench Duhme* and its progeny. *See Langley,* 484 U.S. at 93, 108 S.Ct. 396. The defense is also not manifest on the face of the obligation the Bank seeks to enforce. Accordingly, the Bank's Mo-

tion to Strike this fraud defense is granted.

The Bank further moves to strike Sabadia and Khan's ninth defense that the attorney's fees sought by the Bank are an unenforceable penalty. Attorney's fees up to fifteen percent of the principle and interest on a note may be sought after providing statutory notice to the borrower. O.C.G.A. § 13–1–11, This defense shall not be stricken because its sufficiency depends upon unresolved issues of fact.

■ Sabadia and Khan also claim the Affirmative Defense of failure to mitigate. This defense is not barred by the *D'Oench Duhme* doctrine because it is not premised on obligations by Park Avenue Bank. Although the Bank claims this defense is based on failure to conduct a foreclosure sale, Sabadia and Khan do not specify what mitigation should have been conducted. While it is unclear the extent to which Sabadia and Khan will be able to establish failure to mitigate, at this juncture, the Court finds that disputed issues of fact and law exist as to this defense, and it may not be stricken. At this juncture, the Court finds that the defense of failure to mitigate should not be stricken.

The Bank lastly moves to strike Sabadia and Khan's Affirmative Defense of payment. This defense is certainly based on disputed issues of fact and cannot be stricken at this time. At this juncture, the Court finds that the Bank's motion to strike this defense should be denied because it has failed to show that it is plain that the defense in issue can have no possible bearing on the subject matter of the suit.

Accordingly, the Bank's Motion to Strike Affirmative Defenses is GRANTED as to the defenses of failure of consideration and

fraud, but DENIED as to the remaining defenses.

## V. *Sabadia and Khan's Motion to Dismiss Shailendra's Amended Crossclaim*

Sabadia and Khan move to dismiss Shailendra's Amended Crossclaim against them [Doc. 46]. As noted, Shailendra first asserted a Crossclaim for indemnification [Doc. 14]. Shailendra then filed an Amended Crossclaim in which he asserted a claim for attorney's fees [Doc. 41]. Sabadia and Khan argue that this Amended Crossclaim superseded the original Crossclaim for indemnification; thus, Sabadia and Khan argue, the Crossclaim against them for indemnification has been effectively "withdrawn" by this amendment. The only claim remaining, according to Sabadia and Khan, is the Amended Crossclaim for attorney's fees. Sabadia and Khan then reason that the remaining claim for attorney's fees does not create an independent cause of action and fails to state a claim. Sabadia and Khan also urge that this Crossclaim should be dismissed for failure to plead its elements with specificity.

■ Sabadia and Khan are correct that, generally, an amended pleading supersedes the former pleading; " 'the original pleading is abandoned by the amendment, and is no longer part of the pleader's averments against his adversary.' " *Pintando v. Miami–Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir.2006)). However, where the amendment specifically refers to or adopts the earlier pleading, it does not supersede the prior pleading. *Varnes v.*

*Local 91, Glass Bottle Blowers Ass'n of U.S. & Can.*, 674 F.2d 1365, 1370 n. 6 (11th Cir.1982). Shailendra's Amended Crossclaim for Attorney's Fees is entitled "Crossclaim II" [Doc. 41 at 10]. This label is in reference to Shailendra's original Crossclaim and evidences Shailendra's intent to add a crossclaim to his original. It is clear that Shailendra's Amended Crossclaim supplements, and does not supersede, his original Crossclaim. Sabadia and Khan cannot claim to have been confused or prejudiced by the Amended Crossclaim. It is unnecessary to request attorney's fees in a separate count. It may be more appropriate to request recovery of attorney's fees in the relevant ad damnum clause of the Crossclaim. However, failure to do so does not result in dismissal of the request. The Court is also aware of the strong judicial policy favoring adjudications on the merits, *see In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir.2003), and the Court will not dismiss Shailendra's Crossclaims.

Sabadia and Khan's Motion to Dismiss Shailendra's Amended Crossclaim [Doc. 46] is DENIED.

## VI. *Sabadia and Khan's Motion for Leave to File Second Amended Answer, Counterclaim and Crossclaim*

On January 17, 2012, Sabadia and Khan filed a Motion to Leave to File Second Amended Answer, Counterclaim and Crossclaim [Doc. 55]. This Amendment is sought to clarify their allegations, and, more specifically, this Amendment specifies that they raise an Affirmative Defense of fraud in the factum and attempt to allege facts showing their claims are not barred by the *D'Oench Duhme* doctrine. The Bank opposes this Amendment [Doc.

60]. Sabadia and Khan argue that this Amendment is governed by Federal Rule of Civil Procedure 15, which directs that leave to amend a party's pleadings shall be "freely given when justice so requires" [Doc. 55 at 2]. An amendment under Rule 15 should only be denied if there is evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Bank argues that this Motion for Leave to Amend is governed by Federal Rule of Civil Procedure 16(b)(4), which directs that a scheduling order may only be modified for good cause and with the court's consent. The Bank notes that the Joint Preliminary Report approved by this Court required amending the pleadings within thirty days of the filing of the Report on October 28, 2011 [Doc. 23], and this proposed Amendment was not filed until January 17, 2012.

▮ Under either rule, this Amendment must be denied. This Amendment attempts to bolster the claims of fraud by labeling the defense "fraud in the factum, or 'real fraud'" and specifying that the fraud was written and recorded [Doc. 55–1 at 2, 24]. It also alleges that Sabadia and Khan were unaware of the fraud [*Id.* at 2, 7]. This Amendment also attempts to bring Sabadia and Khan's claims within the statutory requirements of Section 1823(e) by adding allegations that the second renewal of the loan, the note the Bank seeks to enforce, was approved by Park Avenue Bank's loan committee or board of directors [*Id.* at 8, 24]. The Amendment also adds allegations that the wrongful

transactions were contained in Park Avenue Bank's records [*Id.* at 11]. Sabadia and Khan also modify their allegations to specify that the alleged agreement was executed by specifying that the funds were disbursed as evidenced by Park Avenue Bank Disbursement Authorizations [*Id.* at 11].

The proposed amendments are futile. Even if Sabadia and Khan change their claim and defense to allege fraud in the factum, the Court is still required to look beyond labels and determine if they have stated grounds for a claim of fraud in the factum claim. *Solymar Invs., Ltd.*, 672 F.3d at 994 ("However, much as Shakespeare long ago observed that a rose by any other name is still but a rose, we find that a fraud in the inducement claim, though garbed in the trappings of fraud in the factum, is still but a fraud in the inducement claim.") (footnote omitted). Sabadia and Khan's factual allegations do not state a claim for fraud in the factum, regardless of labels. Further, the Amendment's additional factual allegations are insufficient to bring it within the requirements of Section 1823(e). Sabadia and Khan have failed to sufficiently state that the counterclaim meets the first requirement of Section 1823(e): that there was a written agreement for which the FDIC and its successors are now responsible. The proposed Amendment does not cure this deficiency and is futile.

Accordingly, Sabadia and Khan's Motion for Leave to File Amended Answer, Counterclaim and Crossclaim [Doc. 55] is DENIED.

## VII. *Conclusion*

For the foregoing reasons, Bank of the Ozarks' Motion to Dismiss Counterclaims

and Strike Affirmative Defenses [Doc. 38] is GRANTED in part and DENIED in part. Sabadia and Khan's Counterclaims against Bank of the Ozarks are barred by the *D'Oench Duhme* doctrine and that doctrine's codification in 12 U.S.C. § 1823(e) and must be DISMISSED. Sabadia and Khan's Affirmative Defenses of failure of consideration and fraud are insufficient as a factual and legal matter and are STRICKEN. Sabadia and Khan's Motion for Leave to File Amended Answer, Counterclaim and Crossclaim [Doc. 55] is DENIED. Sabadia and Khan's Motion to Dismiss Shailendra's Amended Crossclaim [Doc. 46] is DENIED. Shailendra's Motion for Summary Judgment [Doc. 69] is DISMISSED AS MOOT without prejudice to its renewal.

SO ORDERED.